[Civ. No. 27395. Second Dist., Div. Two. April 24, 1964.]

THE PEOPLE, Plaintiff and Appellant, v. VINE VAN GORDEN et al., Defendants and Respondents.

Stanley Mosk, Attorney General, Howard S. Goldin, Assistant Attorney General, N. B. Peek and Don G. Kircher, Deputy Attorneys General, for Plaintiff and Appellant.

Andre & Wood and Richard D. Wood for Defendants and Respondents.

HERNDON, Acting P. J.—The plaintiff State of California appeals from the judgment of dismissal entered against it in its action seeking to condemn certain parcels of land for state park purposes. The trial court, sitting without a jury in the trial of the preliminary legal issues relating to public use and necessity, found that the condemnation was for a "public use," but that there was no public *necessity* for the acquisition of the land described in the complaint.

"Generally, statutory requirements of *necessity* as a condition of the exercise of the power of eminent domain are liberally construed by the courts so as not to limit unnecessarily the power of the condemning agency. ... The cases above reflect the general rule as stated in 29 Corpus Juris Secundum 886, section 90: ' "*Necessity*," within the rule that the particular property to be appropriated must be necessary, does not mean an absolute but only a reasonable or practical necessity, such as would combine the greatest benefit to the public with the least inconvenience and expense to the condemning party and property owner consistent with such benefit, although it does not include the taking of land which may merely render the employment of the improvement more convenient or less expensive, or for a necessity which is merely colorable.' " (*City of Hawthorne* v. *Peebles,* 166 Cal.App.2d 758, 761 [333 P.2d 442]. See also *Monterey County Flood Control & Water Conservation Dist.* v. *Hughes,* 201 Cal.App.2d 197, 213-214 [20 Cal.Rptr. 252].)

Although a condemner must allege and prove necessity (Code Civ. Proc., §§ 1241, subd. 2, and 1244, subd. 3) in takings for the extension, improvement or development of the state park system, such necessity is established initially and prima facie by the filing of a declaration of the Director of Parks and Recreation. Section 5006.1 of the Public Resources Code expressly provides:

"The declaration of the director shall be prima facie evidence: (a) Of the public necessity of such proposed acquisition. (b) That such real or personal property or interest therein is necessary therefor. (c) That such proposed acquisition is planned or located in a manner which will be most compatible with the greatest public good and the least private injury."

"Prima facie evidence is that degree of evidence which suffices for proof of a particular fact until contradict-

ed and overcome, as it may be, by other evidence, direct or indirect. For example, the certificate of a recorder is prima facie evidence of a record, although it may afterwards be rejected on proof that there is no such record. And a bank account is prima facie evidence of the transactions properly recorded therein. ■ But the effect of prima facie evidence is not destroyed merely by the introduction of contradictory evidence. It stands as proof of the fact until it is both contradicted and overcome by other evidence.'' (18 Cal.Jur. 2d, Evidence, § 13, p. 435.)

■ In the instant action, appellant introduced in evidence the declaration of the director in conformity with section 5006.1 and rested. Appellant was entitled to judgment as prayed until and unless the prima facie case which it had made was thereafter overcome by the introduction of sufficient contrary evidence. Respondents introduced no evidence on the subject in the form of testimony of their own witnesses but called two employees of appellant under the provisions of section 2055 of the Code of Civil Procedure.

The first such witness, a land agent for the state, was able to supply no substantial information bearing in any way upon any of the issues involved. The second witness, Richard A. May, Regional Supervisor of Planning and Development, answered various questions regarding the issues to the extent that his limited knowledge and authority permitted. That is, he testified that above him in rank and authority were the Supervisor of Planning and Development, the Department Chief of the Division of Beaches and Parks, Technical Services, the Chief of the Division of Beaches and Parks, and, finally, the Director of the Department of Parks and Recreation. His sole concern was the development of a plan to *utilize* the land which the department theretofore had determined to acquire.

In addition, he had not been serving in his present capacity at the time the original study of the area had been made and approved by the then State Park Commission. However, he had made a ''follow-up'' study in the matter, and, insofar as his personal knowledge was concerned, he approved of and agreed with the conclusions earlier reached by his superiors. Nothing whatsoever is found in his testimony which in any way conflicts with the disputable presumption created by section 5006.1 by the filing of the director's declaration.

Nevertheless, at the close of this phase of the proceeding, the trial court made the following findings of fact and con-

clusions of law: "FINDINGS OF FACT. 1. That the property described in the complaint is being condemned for a public use. 2. That there is no public necessity for the acquisition of the property described in the complaint in this action. From the foregoing facts, the court concludes: CONCLUSIONS OF LAW: 1. Defendants and each of them are entitled to judgment of dismissal against the plaintiff, together with costs."

█ Although the mere statement of the ultimate legal issue to be determined in the form of a finding of fact is generally inappropriate (cf. *Bellerue* v. *Business Files Institute, Inc.*, 215 Cal.App.2d 383, 395 [30 Cal.Rptr. 232]), it is the general rule that it is sufficient to find upon the ultimate and determinative issues of fact. (Cf. *Nisbet* v. *Rhinehart*, 2 Cal.2d 477, 482 [42 P.2d 71]; *Hannah* v. *Canty*, 175 Cal. 763, 769 [167 P. 373].) However, even where permissible, such "findings of fact" obviously are of little aid to an appellate court in determining the propriety of the trial court's determination. In such circumstances any expression of the trial court's reasoning assumes great importance. █ In the instant case, the rules restated in *Ehrenreich* v. *Shelton*, 213 Cal.App.2d 376, 378-379 [28 Cal.Rptr. 855], are particularly apposite:

"It is a general rule, of course, that the judgment of a trial court will not be disturbed even though in arriving at that judgment the trial court may rely upon erroneous reasoning. [Citation.] █ It is held in this state that although the reasons reflected in an opinion of the trial court are not ordinarily effective to disturb the final judgment, nevertheless the appellate court may inspect that opinion in order to determine the processes of reasoning by which the trial court arrived at the result. [Citations.] In a number of cases, however, it has been held that where the record reflects that in arriving at the result of which appellant complains, the trial court relied upon erroneous reasoning and except for that reliance would probably not have reached such result, then a judgment may properly be reversed. [Citations.]

"In the instant case, the erroneous conclusion of the trial court that the burden of proof remained upon the plaintiff was reflected not only in the minutes of the court but was actually included in the findings themselves. The seriousness of this error is readily determined by a brief consideration of the evidence."

An identical and equally serious type of error is manifest from the record in the instant case. As heretofore indicated,

appellant had sustained its burden of proof by the introduction of the director's declaration. It was under no compulsion either to introduce any additional evidence or to supply witnesses to justify the determination represented by this declaration. The testimony of the employees called by respondents under section 2055 did not in any way contradict the disputable presumption theretofore created. Their testimony, viewed most strongly in respondents' favor, demonstrated only that *they personally* were lacking in knowledge of *all* the factors that were considered, or may have been considered, by the department in reaching *its* determination.

However, there is no duty resting upon the condemning party to convince the trial court that the Legislature was correct in promulgating the prima facie evidence rule found in section 5006.1. The legislative pronouncement being clear, the trial court was bound to accept it until sufficient contradictory evidence was presented by the opposing party. Obviously such evidence could not be provided by respondents' calling as witnesses two employees of the condemning agency who were without any essential authority and by cross-examination under section 2055 convincing the trial court that *these selected witnesses* were lacking adequate knowledge of the subject. The opinion of the trial court delivered at the time of rendering its oral judgment demonstrates that this is precisely what occurred in the present case.

The court first stated that appellant had "failed to *maintain* the state of prima facie evidence created by the introduction" of the director's declaration.[1] This statement was made in the face of the fact that it was conceded by all parties that the need for additional state park lands in the area to supply camping facilities was imperative and that the present site was well suited to meet this need. The witnesses called by respondents concurred in the determination made in the declaration and, to the extent of their personal knowledge, testified to facts supporting such determination. The court's comments then continued:

"The court recommends that before another attempt is made at acquisition that the People be better prepared to establish necessity in the form of concrete figures of need and

[1]As heretofore noted, when a prima facie case has been proven, it does not need to be "maintained" by additional evidence. It is self-sustaining until such time as sufficient contradictory evidence has been introduced to overcome it.

present need and projected use of present facilities in the general area of the proposed take, together with *irrefutable* proof that present facilities in the Central Coast areas cannot be expanded to meet present needs and the needs of the *immediate* future.'' (Italics added.)

The quoted statement clearly demonstrates the court's misconception relating to the burden of proof. Until the prima facie case established by the application of section 5006.1 was overcome by contrary evidence, appellant was under no duty ''to establish necessity in the form of concrete figures'' or otherwise. Even if some contrary evidence had been introduced (and in fact none was), the plaintiff would not have been required to establish necessity by *''irrefutable proof''* of any given fact.

If any possible doubt could remain that the trial court wholly misconceived the duty of appellant herein, it is removed by the following closing comment, found in the court's opinion: ''The Court does not intend to be critical of Mr. Peterson or Mr. May, the State officials involved in testimony. *It is the Court's feeling that they were without effective tools to do the job assigned to them.*'' (Italics added.)

When it is recalled that ''no job was assigned to them,'' since the state not only was not required to justify its declaration and the presumption arising therefrom, but did not even offer them as witnesses, the error upon which the court's ''findings'' or ''conclusions'' rested is made more manifest.

Although respondents and the trial court appear to have relied very largely upon the decision in *People* ex rel. *Dept. of Natural Resources* v. *O'Connell Bros.,* 204 Cal.App.2d 34 [21 Cal.Rptr. 890], the facts presented therein make it abundantly clear that it represents the exact antithesis of the instant case. In that case the plaintiff called as a witness a deputy chief of the Division of Beaches and Parks, who testified that his division had prepared a report on the proposed project which contained the following conclusions, *inter alia* (p. 42):

''4. Providing that all funds available could be placed at Anderson Reservoir, *only 500 acres of land could be acquired, which is only about one-sixth of the area necessary to make a desirable recreation unit. 5. If additional acquisition* funds cannot be anticipated in the immediate future, *it seems doubtful that the State should enter into a recreation program on Anderson Reservoir.*'' (Italics added.)

The decision then noted that not only did the proposed project depend upon financing and development by Santa Clara County, which had expressed only a "willingness" to enter into a cooperative agreement (no binding agreement having been made) but, further, it was admitted that the 500 acres involved in the proposed take was *too small to develop* and that the proposed project would require a total of approximately 3,000 acres. Such evidence being directly and expressly contrary to the declaration of the director, it was held the finding of lack of public necessity was supported by the evidence.

In the present case, Mr. May, who was called by respondents, testified to no such contrary facts. Although he had not prepared the initial report on which the determination of the department was based, but merely had prepared a study regarding the use to be made of the property whose selection already had been made by others, he testified that the property was adequate for the purposes intended and that state funds were available for its acquisition. Although funds would not be allocated for its improvement until ownership was acquired by the state, the state was the only agency involved and it was ready and willing to proceed therewith.

Since all the evidence received in this case was entirely consistent with the appellant's prima facie case established pursuant to the provisions of section 5006.1, the legislative mandate should have been obeyed and given effect.

The judgment is reversed.

Roth, J., and Kincaid, J., pro tem.,* concurred.

A petition for a rehearing was denied May 18, 1964, and respondents' petition for a hearing by the Supreme Court was denied June 16, 1964.

*Retired judge of the superior court sitting pro tempore under assignment by the Chairman of the Judicial Council.