[No. A066471. First Dist., Div. Four. Oct. 17, 1995.]

CALIFORNIA COURT REPORTERS ASSOCIATION, INC., et al.,
Plaintiffs and Appellants, v.
JUDICIAL COUNCIL OF CALIFORNIA et al., Defendants and
Respondents.

**COUNSEL**

Altshuler, Berzon, Nussbaum, Berzon & Rubin, Fred H. Altshuler, Indira Talwani and Scott A. Kronland for Plaintiffs and Appellants.

Kelvin H. Booty, Jr., County Counsel, Douglas Hickling, Chief Assistant County Counsel, Gibson, Dunn & Crutcher, Robert H. Wright and Richard Chernick for Defendants and Respondents.

**OPINION**

**REARDON, J.**—Effective in 1994, the Judicial Council promulgated rules of court allowing electronic recording of superior court proceedings, despite

a statutory scheme authorizing official shorthand reporting of these proceedings and the Legislature's rejection of legislation authorizing electronic recording. (See Cal. Rules of Court, rules 33(e), 891, 892, 980.3.) As rules of court are only valid to the extent that they comply with the constitutional charge to be "not inconsistent with statute," we conclude that these rules were promulgated in excess of Judicial Council authority. (See Cal. Const., art. VI, § 6.)

In our case, appellants California Court Reporters Association, Inc. (CCRA) and others[1] petitioned for a writ of mandate to prevent respondents Judicial Council of California and others[2] from allowing electronic recording of superior court proceedings. The trial court denied the petition and CCRA appeals. CCRA contends, inter alia, that the California Rules of Court authorizing and funding electronic recording in superior courts are invalid because they are inconsistent with statutory law. We agree and thus reverse the judgment.

## I. FACTS

The facts of this case are undisputed. For more than a century, state law has provided that the official record of superior court[3] proceedings be taken down in shorthand. (Code Civ. Proc.,[4] § 269; see Stats. 1866, ch. 235, § 1, pp. 232-233; Stats. 1872, ch. 296, § 1, pp. 400-401; Cal. Code Amends. 1873-1874, ch. 383, § 269, p. 15; Cal. Code Amends. 1880, ch. 35, § 269, pp. 21, 53].) In 1986, the Legislature authorized a demonstration project in selected counties—including Alameda County—to assess the feasibility of using electronic means of producing a verbatim record of these proceedings. (§ 270, subd. (a).) By January 1992, the Judicial Council was to report to the Legislature on the feasibility of electronic recording of official superior

---

[1]For convenience, appellants California Court Reporters Association, Inc., Alameda County Official Court Reporters Association, shorthand reporters Floyd L. Butler, Cheryl M. Redlich and Paul J. Runyon, taxpayer Dennis DeFreitas and Attorney Steven Kazan will be referred to collectively as CCRA.

[2]For convenience, respondents Judicial Council of California, Alameda County Auditor-Controller Patrick O'Connell and Executive Officer and Clerk of the Alameda County Superior Court Ron Overholt will be referred to collectively as Judicial Council. The Alameda County officials have filed a brief adopting by reference the positions taken by the Judicial Council in its respondent's brief.

[3]Since 1976, the Legislature has authorized electronic recording of municipal and justice court proceedings if an official reporter and a temporary court reporter were unavailable. (Gov. Code, § 72194.5, enacted by Stats. 1975, ch. 665, §§ 1-2, pp. 1455-1456.)

[4]All statutory references are to the Code of Civil Procedure unless otherwise indicated.

court proceedings.[5] (§ 270, subd. (g).) In 1992, the Judicial Council sponsored a bill that would have allowed electronic recording to be used after January 1, 1994. The Assembly Judiciary Committee rejected the bill and it was never reported from committee to the full Assembly. (See Assem. Bill No. 2937 (1991-1992 Reg. Sess.) §§ 1-3; see also *Los Angeles County Court Reporters Assn.* v. *Superior Court* (1995) 31 Cal.App.4th 403, 408-409 & fn. 6 [37 Cal.Rptr.2d 341].)

Under the terms of the statute, the demonstration project was to end on January 1, 1994.[6] (§ 270, subd. (a).) In November 1993, the Judicial Council adopted rules of court allowing official electronic recording of superior court proceedings after January 1, 1994.[7] (Cal. Rules of Court, rules 33(e), 891, 892, 980.3.) The Alameda County Superior Court also adopted local rules governing the electronic recording of its proceedings.

In December 1993, appellants CCRA, Alameda County Official Court Reporters Association and five individuals petitioned the Alameda County Superior Court for a writ of mandate to preclude the Judicial Council and Alameda County officials from implementing the electronic recording rules. CCRA also sought an alternative writ and a stay order. In January 1994, the parties stipulated that the rules would not be implemented until a final decision was reached on the petition.[8] The Judicial Council demurred to the petition for writ of mandate. The parties agreed that the trial court[9] hear the merits of the petition, posing only questions of law. In March 1994, the trial court issued a statement of intended decision, upholding the challenged rules as "not inconsistent with statute." Judgment denying[10] the petition for writ of mandate was entered in May 1994.

---

[5]Originally, the report was due on January 1, 1989, but the law was amended to extend the due date to January 1, 1992. (§ 270, subd. (g), as enacted by Stats. 1986, ch. 373, § 1, pp. 1552-1554, and as amended by Stats. 1989, ch. 678, § 1, pp. 2240-2241.)

[6]Originally, the project was to terminate during 1991, but the statute was amended in 1989 to extend the project until January 1, 1994. (§ 270, subd. (a), as enacted by Stats. 1986, ch. 373, § 1, pp. 1552-1554, and as amended by Stats. 1989, ch. 678, § 1, pp. 2240-2241.)

[7]During the pre-adoption comment period on the proposed electronic recording rules, CCRA advised the Judicial Council of its opinion that the proposed rules were inconsistent with sections 269 and 270.

[8]This stipulation operates as a stay of enforcement of the rules during the pendency of this appeal and any Supreme Court review.

[9]The sitting judges of Alameda County Superior Court were recused from this case and Justice Robert O. Staniforth—since deceased—heard it.

[10]The petition was granted insofar as the rules were inconsistent with sections 347 and 677 of the Welfare and Institutions Code, pertaining to juvenile court proceedings. In all other respects, the petition was denied. Before the trial court, the Judicial Council acknowledged that the rules did not apply in juvenile proceedings. Thus, the Judicial Council does not challenge that part of the trial court's order granting the petition for writ of mandate.

## II. Validity of Rules of Court

### A. *"Not Inconsistent with Statute"*

██ First, CCRA contends that rules of court authorizing and funding[11] electronic recording of superior court proceedings are invalid because they are inconsistent with statute. (See Cal. Rules of Court, rules 33(e), 891, 892, 980.3.)[12] It asserts that, by these rules, the Judicial Council seeks to authorize the use of electronic recording to make the official superior court record.

---

[11]The trial court found that the use of electronic recording in superior courts after January 1, 1994, would result in the expenditure of public funds.

[12]The challenged rules state, as follows:

"The requirement of this rule for a reporter's transcript is satisfied by a transcript of electronic recordings made on equipment of a type approved by the Judicial Council. This subdivision does not authorize the use of electronic recording to make the record of proceedings in a case in which a death sentence may be imposed." (Cal. Rules of Court, rule 33(e).)

"(a) This rule is adopted pursuant to Government Code section 68086(a) and shall be applied so as to give effect to that section. It applies to superior court departments. [¶] (b)(1) Each trial court shall adopt and post in the clerk's office a local policy enumerating the departments in which the services of official court reporters are normally available, and the departments in which the services of official court reporters are not normally available during regular court hours. If the services of official court reporters are normally available in a department only for certain types of matters, those matters shall be identified in the policy. [¶] The court shall publish its policy in a newspaper if one is published in the county. In lieu of publishing the policy, the court may (i) send each party a copy of the policy at least 10 days before any hearing is held in a case, or (ii) adopt the policy as a local rule. [¶] (2) Unless the court's policy states that all courtrooms normally have the services of official court reporters available for civil trials, the court shall require that each party file a statement before the trial date indicating whether the party requests the presence of an official court reporter. If a party requests the presence of an official court reporter and it appears that none will be available, the clerk shall notify the party of that fact as soon as possible before the trial. If the services of official court reporters are normally available in all courtrooms, the clerk shall notify the parties to a civil trial as soon as possible if it appears that those services will not be available. [¶] (3) If the services of an official court reporter will not be available during a hearing on law and motion or other nontrial matters in civil cases, that fact shall be noted on the court's official calendar. [¶] (c) If the services of an official court reporter are not available for a hearing or trial in a civil case, a party may arrange for the presence of a certified shorthand reporter to serve as an official pro tempore reporter. It is that party's responsibility to pay the reporter's fee for attendance at the proceedings, but the expense may be recoverable as part of the costs, as provided by law. [¶] (d) If a party arranges and pays for the attendance of a certified shorthand reporter at a hearing in a civil case because of the unavailability of the services of an official court reporter, none of the parties shall be charged the reporter's attendance fee provided for in Government Code section 68086(a)(1). [¶] (e) As used in this rule and in Government Code section 68086: [¶] (1) 'Civil case' includes all matters other than criminal and juvenile matters. [¶] (2) 'Official reporter' means an official court reporter or official reporter as those phrases are used in statutes, including Code of Civil Procedure section 269 and Government Code section 69941; and includes an official reporter pro tempore as the phrase is used in Government Code section 69945 and other statutes, whose fee for attending and reporting proceedings is paid for by the court or the county, and who attends court sessions as directed by the court, and who was not employed to report specific

CCRA argues that these rules are contrary to the Legislature's intent that the official superior court record be made by official reporters and official reporters pro tempore.

■ The Judicial Council is empowered to "adopt rules for court administration, practice and procedure, *not inconsistent with statute* . . . ." (Cal.

---

causes at the request of a party or parties. 'Official reporter' does not include official reporters pro tempore employed by the court expressly to report only criminal, or criminal and juvenile, matters." (Cal. Rules of Court, rule 891.)

"The half-day fee to be charged pursuant to Government Code section 68086 when the court provides verbatim recordkeeping services shall be established by the trial court as follows: [¶] (a) For a trial or portion of a trial in which a certified shorthand reporter is used, the fee shall be equal to the average salary and benefit costs of the reporter, plus indirect costs up to 18 percent of salary and benefits. For purposes of this rule, the daily salary shall be determined by dividing the average annual salary of temporary and full-time reporters by 225 work days. [¶] (b) For a trial or portion of a trial in which audio or videotape record services are used and a person is used exclusively to monitor the equipment the fee shall be equal to the average equipment cost, together with salary and benefit costs of the monitor plus indirect costs up to 18 percent of equipment, salary, and benefits. For purposes of this rule, the daily salary shall be determined by dividing the average annual salary of temporary and full-time monitors by 225 work days. [¶] (c) For a trial or portion of a trial in which audio or videotape record services are used without a person exclusively to monitor the equipment, the fee shall be based on the average daily cost of the equipment, plus indirect costs up to 18 percent of the equipment cost. [¶] (d) As used in this rule, equipment cost shall include the cost of acquisition, installation, and maintenance, amortized over the useful life of the equipment, or if the equipment is leased, its rental cost. [¶] (e) Unless the court orders otherwise for good cause, a half-day fee shall be charged for any matter which lasts more than one hour. A full day fee shall be charged for any matter lasting more than four hours." (Cal. Rules of Court, rule 892.)

"(a) Superior courts have an obligation to maintain an adequate record of oral proceedings to permit reference and, when necessary, appellate review. Audio or video recording is authorized as a means of making the official verbatim record of oral proceedings when either subdivision (b) or subdivision (c) applies. [¶] (b) A superior court may cause the verbatim record of oral proceedings in a civil matter to be made by electronic recording on equipment of a type approved by the Judicial Council when an official reporter or official reporter pro tempore is unavailable. [¶] An official reporter or official reporter pro tempore is unavailable within the meaning of this rule, among other circumstances: [¶] (1) when the person regularly employed or under contract as such fails to appear because of illness or injury, the need to transcribe notes of cases on appeal, or other cause beyond the court's control; or [¶] (2) when the court determines that the funds available for reporting services are insufficient to employ a qualified person for the position at the prevailing wage or at the normal per diem rate of compensation; or [¶] (3) when the court determines that a reporter will be unavailable based on the court's existing staff of official court reporters, reasonable projections concerning official reporters' vacations, sick leaves, and other approved absences, and reasonable projections as to the workload in each of the court's departments. [¶] (c) A superior court may cause the verbatim record of oral proceedings in any matter to be made by electronic recording on equipment of a type approved by the Judicial Council when the parties proceed with a hearing or trial in the absence of an official court reporter or official court reporter pro tempore without objection. [¶] This subdivision does not apply to cases in which a death sentence may be imposed." (Cal. Rules of Court, rule 980.3.)

Const., art. VI, § 6, italics added; see *People* v. *Hall* (1994) 8 Cal.4th 950, 960, 963 [35 Cal.Rptr.2d 432, 883 P.2d 974]; *In re Jermaine B.* (1994) 21 Cal.App.4th 1280, 1284 [26 Cal.Rptr.2d 612]; *Iverson* v. *Superior Court* (1985) 167 Cal.App.3d 544, 547-548 [213 Cal.Rptr. 399].) These rules have the force of law. (*Alicia T.* v. *County of Los Angeles* (1990) 222 Cal.App.3d 869, 884 [271 Cal.Rptr. 513]; see *In re Richard S.* (1991) 54 Cal.3d 857, 863 [2 Cal.Rptr.2d 2, 819 P.2d 843]; *Brooks* v. *Union Trust etc. Co.* (1905) 146 Cal. 134, 138 [79 P. 843]; *Albermont Petroleum, Ltd.* v. *Cunningham* (1960) 186 Cal.App.2d 84, 89 [9 Cal.Rptr. 405].) However, the Judicial Council may not adopt rules that are inconsistent with governing statutes. (*People* v. *Hall, supra,* at p. 960; *In re Robin M.* (1978) 21 Cal.3d 337, 346 [146 Cal.Rptr. 352, 579 P.2d 1].) The Judicial Council purported to adopt rules 33(e), 891, 892 and 980.3 of the California Rules of Court pursuant to its constitutional authority.

The trial court concluded that the challenged rules were "not inconsistent with statute" and thus, passed constitutional muster. In doing so, it interpreted the phrase "not inconsistent with statute" to mean more than merely inharmonious, but connoting an impossibility of concurrent operative effect. ■ On appeal, we are not bound by the trial court's ruling. The interpretation of statutes is a question of law for us to determine anew. (See *California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699 [170 Cal.Rptr. 817, 621 P.2d 856]; *City of Lafayette* v. *East Bay Mun. Utility Dist.* (1993) 16 Cal.App.4th 1005, 1013 [20 Cal.Rptr.2d 658].)

■ Preliminarily, we must determine the relative value to be assigned to the Judicial Council's rules and the Legislature's enactment of statutes before we turn to the merits of our inquiry. The Judicial Council argues that as it and the Legislature both derive their powers from the state Constitution, the two institutions are coequals. We find this argument to be specious. The Constitution reserves to the Legislature and the people of this state the higher right to provide rules of procedure. The Judicial Council's right is secondary—a right to adopt rules only when the higher authority of the Legislature and the people has not been exercised. (*Stockton Theatres, Inc.* v. *Palermo* (1956) 47 Cal.2d 469, 476-477 [304 P.2d 7]; *Lane* v. *Superior Court* (1930) 104 Cal.App. 340, 344 [285 P. 860].) Its rulemaking power is limited by existing law as enacted by the Legislature, thus making the legislative branch an inherently higher authority than the Judicial Council itself. (See *Stockton Theatres, Inc.* v. *Palermo, supra,* at p. 476; *Lane* v. *Superior Court, supra,* at p. 344.) The challenged rules must be measured for consistency against the legislative enactments.

██    Our next task is to determine what constitutes a rule of court that is "not inconsistent with statute." (See Cal. Const., art. VI, § 6.) CCRA argues that a rule of court is inconsistent with a statute if it contravenes the intent of the Legislature that passed that statute. The Judicial Council contends that the trial court properly defined the term "inconsistent" to mean more than merely inharmonious or unsymmetrical, but to connote an impossibility of concurrent operative effect. It urges us to find that a rule of court is inconsistent with a statute only if the rule expressly prohibits or permits that which the statute permits or prohibits.

Construing the relevant constitutional language, the trial court defined the term "not inconsistent" as "not . . . merely inharmonious or unsymmetrical, but connot[ing] impossibility of concurrent operative effect, or contradictory in the sense that the provisions cannot co-exist . . . . [¶] " 'Inconsistent' means mutually repugnant or contradictory; contrary, the one to the other, so that both cannot stand. The acceptance or establishment of the one implies the abrogation or abandonment of the other . . . . [¶] [In the context of local and state court rules], 'inconsistent' means court rules so antithetical that it is impossible as a matter of law that they can both be effective." Based on this definition, the trial court found that the rules permitting electronic recording were consistent with state law and thus, valid.

The trial court relied on out-of-state cases to determine whether the rules were "inconsistent with statute." These cases do not interpret section 6 of article VI of the California Constitution, but consider the meaning of the term "inconsistent" in other contexts. (See *In re Brown* (S.D. Iowa 1971) 329 F.Supp. 422, 426 [positive repugnancy between new and old law required to repeal by implication]; *State* v. *Chavez* (1988) 111 Wn.2d 548 [761 P.2d 607, 612] [local and state court rules found consistent]; *Heaney* v. *Seattle Mun. Court* (1983) 35 Wn.App. 150 [665 P.2d 918, 921] [local and state court rules found consistent]; *State* ex rel. *Dade County* v. *Brautigam* (Fla. 1969) 224 So.2d 688, 691-692 [liberal construction of home rule mandate in Florida Constitution; powers reserved to counties]; *Berry* v. *City of Fort Worth* (Tex.Civ.App. 1937) 110 S.W.2d 95, 103 [under home rule provision, powers are reserved to cities].[13]) When determining the validity of California Rules of Court in the context of a California constitutional grant of authority to a state rulemaking body, we think it more appropriate to look first to California court decisions to interpret key constitutional terms. (See, e.g., *Shay* v. *Roth* (1923) 64 Cal.App. 314, 318 [221 P. 967] [interpreting "consistent" as meaning "in agreement" or "harmonious"].)

---

[13]This appellate decision was later reversed by the Supreme Court of Texas. (*Berry* v. *City of Fort Worth* (1939) 132 Tex. 599 [124 S.W.2d 842, 846-847].)

In the past, California courts have found rules of court inconsistent with statute and thus, held them invalid. (See, e.g., *Sadler* v. *Turner* (1986) 186 Cal.App.3d 245, 247 [230 Cal.Rptr. 561]; *Iverson* v. *Superior Court, supra,* 167 Cal.App.3d at pp. 546-548; see also *In re Robin M., supra,* 21 Cal.3d at p. 346.) These courts did not test the validity of the rule of court by determining whether it was impossible as a matter of law for both the statute and the rule to have concurrent operative effect, as the trial court did in our case. Instead, the courts measured the challenged rule against the statutory scheme to determine whether the rule was consistent with the intent expressed in the legislative enactment.

For example, when a statute allowed five days for filing opposition and a rule of court allowed five *court* days for filing, an appellate court found that the rule was inconsistent with the legislative intent that opposition be filed within five *calendar* days. Although the language of the statute and the court rule could have been harmonized to be made consistent, the court looked behind the express language of the statute to determine the Legislature's intent. (See *Iverson* v. *Superior Court, supra,* 167 Cal.App.3d at p. 548.) In this case, the application of the impossibility of concurrent operative effect test used by the trial court in our case would have resulted in enforcement of a rule that clarified an ambiguous statutory term.

In another case, after reviewing legislative enactments intended to limit prehearing detention of minors to *15 days,* the California Supreme Court rejected a rule of court permitting a *longer* period of prehearing detention by means of dismissing the original petition and refiling a new one. Although the court rule did not expressly contradict the statute, its effect would have violated the legislative intent behind that statute. Thus, the rule was disapproved because it was inconsistent with that intent. (See *In re Robin M., supra,* 21 Cal.3d at p. 346.)

In another appellate decision, when a statute was silent on any notice of motion requirement but case law had recognized the absence of this requirement as significant, a rule of court requiring notice of motion was held invalid as inconsistent with that statute. (*Sadler* v. *Turner, supra,* 186 Cal.App.3d at pp. 249-250; see *Cortez* v. *Bootsma* (1994) 27 Cal.App.4th 935, 938 [33 Cal.Rptr.2d 20] [discussing *Sadler*].) If our trial court's approach of impossibility of concurrent operative effect had been employed, the notice of motion rule would have been upheld, as it could have been interpreted as having supplied a procedural requirement that had been omitted from the statute.

In like manner, courts determine whether local rules conflict with state law and are therefore invalid. (See, e.g., *Cortez* v. *Bootsma, supra,* 27

Cal.App.4th at pp. 938-939.) For example, when a state law required a trial court to award reasonable attorney fees, a local rule limiting the amount of a fee awarded to plaintiff's counsel to an amount agreed to be paid by the plaintiff was invalidated as inconsistent with state law vesting discretion to determine the reasonableness of fees in the trial court. (*Id.* at pp. 937-938.) In another case, a local rule requiring a written notice of motion was construed to be inapplicable to suppression motions made during preliminary hearings which, by statute, may be made orally. One reason for this interpretation was to avoid any "unlawful[] conflict with the statutory authorization for oral motions" contained in the governing statute. (*Cox* v. *Superior Court* (1993) 19 Cal.App.4th 1046, 1050-1051 [23 Cal.Rptr.2d 751].)

Recently, the California Supreme Court tested the validity of a statewide rule of court by determining the legislative intent of the governing statutory law and measuring the rule against that intent. (See *People* v. *Hall, supra,* 8 Cal.4th 950.) The determinate sentencing law permitted a sentencing judge to consider a myriad of aggravating circumstances—including those relating to the defendant such as his or her parole status—when determining whether to impose an upper term. (See Pen. Code, § 1170; *People* v. *Hall, supra,* at pp. 960-961.) The challenged rule provided that an aggravating circumstance would only support imposition of the upper term for an enhancement if that circumstance directly related to the fact giving rise to the enhancement. (Cal. Rules of Court, former rule 428(b); *People* v. *Hall, supra,* at pp. 952-953.) A unanimous court invalidated the rule as an improper attempt to narrow a trial court's sentencing discretion, contrary to the Legislature's intent. (*People* v. *Hall, supra,* at p. 961.)

For purposes of our case, it is important to note that the Supreme Court focused its inquiry on whether the rule was consistent with the legislative intent behind the statutory law. The case is replete with references to legislative intent. (See *People* v. *Hall, supra,* 8 Cal.4th at pp. 953, 956, 958, 961-963.) The rule of court was found to conflict with the statutory scheme despite the fact that the Legislature did not specifically preclude the Judicial Council from adopting a different approach to the matters that were the subject of the challenged rule than the approach that the Legislature had adopted on related matters. (See *id.* at p. 962.) "[T]he rule is inconsistent with the statutory scheme it was intended to implement and, for that reason, is invalid." (See *id.* at p. 953.)

Having reviewed the pertinent California cases, we conclude that when evaluating whether a rule of court is "not inconsistent with statute" within the meaning of the California Constitution, a court must determine the

Legislature's intent behind the statutory scheme that the rule was intended to implement and measure the rule's consistency with that intent. (See *People* v. *Hall, supra,* 8 Cal.4th at p. 953.) Thus, the trial court erred by finding a rule of court inconsistent with statute only if it was impossible to give both concurrent effect.

B. *Legislative Intent*

In the trial court, CCRA conceded that no legislative act is expressly inconsistent with the challenged rules. We agree that there is no statute expressly prohibiting a superior court from making an official record by electronic means, rather than by using certified shorthand reporters or expressly mandating that the official superior court record be made by shorthand reporters. (See *Los Angeles County Court Reporters Assn.* v. *Superior Court, supra,* 31 Cal.App.4th at p. 409 [sections 269 and 270 do not proscribe use of electronic recording when no request for an official shorthand reporter is made].) However, this is not determinative of the question before us. We must determine whether the statutory scheme addresses the making of the official record in such a manner as to suggest that the Legislature implicitly intended that this record be made by certified shorthand reporters rather than by electronic recording.

Several statutes comprise the statutory scheme of making an official record. Subdivision (a) of section 269 sets out the basic provisions for requesting an official superior court record. "The official reporter of a superior court, or any of them, where there are two or more, shall, at the request of either party, or of the court in a civil action or proceeding, and on the order of the court, the district attorney, or the attorney for the defendant in a criminal action or proceeding, take down in shorthand all testimony, objections made, rulings of the court, exceptions taken, all arraignments, pleas, and sentences of defendants in criminal cases, arguments of the prosecuting attorney to the jury, and all statements and remarks made and oral instructions given by the judge. If directed by the court, or requested by either party, the official reporter shall, within such reasonable time after the trial of the case as the court may designate, write the transcripts out, or the specific portions thereof as may be requested, in plain and legible longhand, or by typewriter, or other printing machine, and certify that the transcripts were correctly reported and transcribed, and when directed by the court, file the transcripts with the clerk of the court." (§ 269, subd. (a).) This statute

also provides for the preparation of an appellate record and the request for a transcript. (§ 269, subds. (b)-(c).)[14]

One court has held that section 269 does not require that the official reporter make the record of superior court proceedings, unless requested by a party or the judge. (*Los Angeles County Court Reporters Assn.* v. *Superior Court, supra,* 31 Cal.App.4th at p. 407.) This conclusion is consistent with the opinion of the Legislative Counsel holding that section 269 *requires* that superior court proceedings be taken down by an official shorthand reporter if a request is made.

In section 270, the Legislature authorized certain counties to conduct a demonstration project assessing the feasibility of electronic recording of superior court proceedings. (§ 270, subd. (a).) The effect of section 270 was to override section 269 in the electronic recording demonstration project courtrooms when the project was being conducted between 1986 and 1993. (*Los Angeles County Court Reporters Assn.* v. *Superior Court, supra,* 31 Cal.App.4th at p. 409.) The statute ceased to have any effect when it expired on January 1, 1994. (See § 270, subd. (a).)

Section 273 states that "[t]he report of the official reporter, or official reporter pro tempore, of any court, duly appointed and sworn, when transcribed and certified as being a correct transcript of the testimony and proceedings in the case, is prima facie evidence of such testimony and proceedings." (§ 273.) This statute creates an evidentiary presumption that does not apply if a certified shorthand reporter's official report was not requested. (*Los Angeles County Court Reporters Assn.* v. *Superior Court, supra,* 31 Cal.App.4th at pp. 409-410 [consistent with section 269].)

---

[14]"(b) In any case where a defendant is convicted of a felony, after a trial on the merits, the record on appeal shall be prepared immediately after the verdict or finding of guilt is announced unless the court determines that it is likely that no appeal from the decision will be made. The court's determination of a likelihood of appeal shall be based upon standards and rules adopted by the Judicial Council. [¶] (c) Any court, party, or person may request delivery of any transcript in a computer-readable form, except that an original transcript shall be on paper. A copy of the original transcript ordered within 120 days of the filing or delivery of the transcript by the official reporter shall be delivered in computer-readable form upon request if the proceedings were produced utilizing computer-aided transcription equipment. Except as modified by standards adopted by the Judicial Council, the computer-readable transcript shall be on disks in standard ASCII code unless otherwise agreed by the reporter and the court, party, or person requesting the transcript. Each disk shall be labeled with the case name and court number, the dates of proceedings contained on the disk, and the page and volume numbers of the data contained on the disk. Each disk as produced by the court reporter shall contain the identical volume divisions, pagination, line numbering, and text of the certified original paper transcript or any portion thereof. Each disk shall be sequentially numbered within the series of disks." (§ 269, subds. (b)-(c).)

The Government Code also addresses matters pertaining to official reporting of superior court proceedings. The fees and costs of an official reporter are set forth.[15] (Gov. Code, § 68086.) The appointment of official reporters is authorized.[16] (Gov. Code, § 69941; see *Los Angeles County Court Reporters Assn.* v. *Superior Court, supra,* 31 Cal.App.4th at p. 412 [consistent with section 269].) The court is prohibited from authorizing payment for "any matter or material except that reported by the [official] reporter pursuant to

---

[15]"(a) In all superior court departments not selected to participate in the demonstration project established under Section 270 of the Code of Civil Procedure: [¶] (1) In addition to any other trial court fee required in civil cases, a fee equal to the actual cost of providing that service shall be charged per one-half day of services to the parties, on a pro rata basis, for the services of an official reporter on the first and each succeeding judicial day those services are required. [¶] (2) All parties shall deposit their pro rata shares of these fees with the clerk of the court at the beginning of the second and each succeeding day's court session. [¶] (3) For purposes of this section, 'one-half day' means any period of judicial time during either the morning or afternoon court session. [¶] (4) The costs for the services of the official reporter shall be recoverable as taxable costs at the conclusion of trial. [¶] (5) The Judicial Council shall adopt rules to ensure all of the following: [¶] (A) That parties are given adequate and timely notice of the availability of an official reporter. [¶] (B) That if an official reporter is not available, a party may arrange for the presence of a certified shorthand reporter to serve as an official pro tempore reporter, the costs therefore recoverable as provided in paragraph (4). [¶] (C) That if the services of an official pro tempore reporter are utilized pursuant to this section, no other charge will be made to the parties. [¶] (b) In all superior court departments selected to participate in the demonstration project established under Section 270 of the Code of Civil Procedure, and in all municipal and justice courts: [¶] (1) In addition to any other trial court fee required in civil cases, a fee equal to the actual cost of providing that service shall be charged per one-half day of services to the parties, on a pro rata basis, for official reporting services on the first and each succeeding judicial day those services are required. [¶] (2) All parties shall deposit their pro rata shares of these fees with the clerk of the court at the beginning of the second and each succeeding day's court session. [¶] (3) For purposes of this section, 'one-half day' means any period of judicial time during either the morning or afternoon court session. [¶] (4) The costs for the official reporting services shall be recoverable as taxable costs at the conclusion of trial. [¶] (5) The Judicial Council shall adopt rules to ensure all of the following: [¶] (A) That litigants receive adequate information about any change in the availability of official reporting services. [¶] (B) That if official reporting services are not available, a party may arrange for the presence of a certified shorthand reporter to serve as an official pro tempore reporter, the costs therefore recoverable as provided in paragraph (4). [¶] (C) That if the services of a pro tempore reporter are utilized because official reporting services are unavailable, no other charge will be made to the parties for recording the proceeding." (Gov. Code, § 68086.)

[16]"The judge or judges of any superior court may appoint a competent phonographic reporter, or as many such reporters as there are judges, to be known as official reporter or reporters of such court, and such pro tempore official reporters as the convenience of the court may require. The reporters shall hold office during the pleasure of the appointing judge or judges." (Gov. Code, § 69941.)

"Phonography" is defined as "a system of shorthand writing based on sound." (Webster's New Collegiate Dict. (9th ed. 1984) p. 884.)

section 269 of the Code of Civil Procedure."[17] (Gov. Code, § 69952, subd. (b); see *Los Angeles County Court Reporters Assn.* v. *Superior Court, supra,* at p. 414 [statute inapplicable if official reporter's record is not requested].) Official reporters are paid according to legislatively determined schedules. (See Gov. Code, §§ 69948, 70044.5-70064.)

By contrast, the Government Code specifically provides for electronic recording of municipal and justice court proceedings. If an official reporter is unavailable, electronic recording is permitted. (Gov. Code, § 72194.5.)[18] Section 72194.5 of the Government Code specifically authorizes an exception to section 274c—the municipal and justice courts equivalent of section 269—requiring an official record to be made by an official reporter on request of a party or judge. (*Los Angeles County Court Reporters Assn.* v. *Superior Court, supra,* 31 Cal.App.4th at p. 411 [rejecting CCRA argument that this provision evidences legislative intent to restrict electronic recording to municipal and justice courts].)

A review of these statutes satisfies us that the Legislature intended to authorize electronic recording to create an official record in certain circumstances, but not in superior courts at the present time. As the trial court

---

[17]"(b) Except as otherwise authorized by law, the court shall not order to be transcribed and paid for out of the county treasury any matter or material except that reported by the reporter pursuant to Section 269 of the Code of Civil Procedure. When there is no official reporter in attendance and a reporter pro tempore is appointed, his or her reasonable expenses for traveling and detention shall be fixed and allowed by the court and paid in like manner. When the court orders a daily transcript, necessitating the services of two phonographic reporters, the reporting fee for each of the reporters and the transcript fee shall be proper charges against the county treasury, and the daily transcript shall be pursuant to Section 269 of the Code of Civil Procedure. When the daily transcript is prepared by a single reporter, an additional fee for technological services, as set by the court with the agreement of the reporter, may be imposed. However, the total of the fee for a single reporter and the fee for technological services shall be less than the total fee for two reporters." (Gov. Code, § 69952, subd. (b).)

[18]"Whenever an official court reporter or a temporary court reporter is unavailable to report an action or proceeding in a municipal or justice court, subject to the availability of approved equipment and equipment monitors, the municipal or justice court may order that the action or proceeding be electronically recorded, including all the testimony, the objections made, the ruling of the court, the exceptions taken, all arraignments, pleas, and sentences of defendants in criminal cases, the arguments of the attorneys to the jury, and all statements and remarks made and oral instructions given by the judge. The court shall assign available reporters first to report preliminary hearings and then to other proceedings. A transcript derived from an electronic recording may be utilized whenever a transcript of court proceedings is required. The electronic recording device and appurtenant equipment shall be of a type approved by the Judicial Council for courtroom use." (Gov. Code, § 72194.5; see *In re Armstrong* (1981) 126 Cal.App.3d 565, 575 [178 Cal.Rptr. 902] [to satisfy due process and equal protection protections, defendant entitled to verbatim record on request, despite permissive language of this provision].)

noted, in those circumstances in which the Legislature has authorized electronic recording as a permissible substitute for an official reporter's record, it has done so by statute. The Legislature has specifically authorized electronic recording of the official record in municipal and justice courts and in those superior courts that were part of the now-expired demonstration project. (See § 270, subd. (a); Gov. Code, § 72194.5.) There is no comparable authorization for superior courts at the present time. Instead, section 269 requires that the official reporter make the record of superior court proceedings, if requested by a party or by the court. (§ 269, subd. (a); *Los Angeles County Court Reporters Assn.* v. *Superior Court, supra,* 31 Cal.App.4th at p. 407.) When authorizing the demonstration project in superior courts, the Legislature acknowledged that electronic recording could be used to create an official record "[n]otwithstanding Section 269," requiring an official reporter to create this record on request. (See § 270, subd. (a) [expired Jan. 1, 1994].) Indeed, whenever the Legislature has intended that electronic recording be permitted, it has expressed that intent by specific statutory authorization. (See, e.g., § 2025, subd. (*l*) [depositions may be recorded by audiotape or videotape].) This legislative pattern suggests that while electronic recording is sometimes proper, the normal practice is that a shorthand reporter is to create the official record unless statutory law provides otherwise.

The various statutes consistently treat those courts in which electronic recording is permitted and those in which an official reporter's record is to be made differently. For example, the contrasting language of two subdivisions of section 68086 of the Government Code is noteworthy. Costs for the services of an "official reporter" in "all superior court departments not selected to participate in the demonstration project established under [now-ineffective] Section 270 of the Code of Civil Procedure" are set forth in one subdivision, while costs for "official reporting services" in "all superior court departments selected to participate in the demonstration project established under [now-ineffective] Section 270 of the Code of Civil Procedure, and in all municipal and justice courts" are set forth in another. (See Gov. Code, § 68086, subds. (a)-(b).) Again, of the courts listed in subdivision (b), all were or are specifically authorized by statute to use electronic recording, while there is no authorizing statute permitting the use of electronic recording in those courts listed in subdivision (a). (See § 270, subd. (a); Gov. Code, § 72194.5.) This distinction suggests that the Legislature intended to allow electronic recording to create the official record in some courts, but not others.

The Judicial Council's own reports support this conclusion. By statute, the official record of municipal and justice court proceedings may be electronically recorded under certain circumstances. (Gov. Code, § 72194.5.) The

Judicial Council sponsored this legislation, described in its annual report as providing "the necessary statutory authorization for municipal and justice courts to use electronic recording . . . ." (Judicial Council of Cal., Ann. Rep. (1976) p. 55.) If the Judicial Council needed statutory authorization to establish electronic recording in municipal and justice courts, it is hard to understand why such legislative approval is not needed to create an official superior court record using electronic recording.

The Legislature itself has also spoken on this matter, in a manner consistent with our conclusion. When the Legislature authorized the electronic recording demonstration project in superior courts, the Judicial Council selected certain counties to participate in the project. (§ 270, subd. (a).) In response to an inquiry about the scope of the demonstration project, the Legislative Counsel opined that unselected counties were *not* authorized to use electronic recording in superior courts. It was the opinion of the Legislative Counsel that subdivision (a) of section 269 *requires* that superior court proceedings be taken down by an official shorthand reporter. As the trial court recognized, "[o]ther than for this limited demonstration project, the Legislature has not authorized the use of electronic recording in the superior courts to make the official record."

The fact that the Legislature has by statute authorized electronic recording in some contexts suggests strongly that—unless the existing statutory scheme providing for the official record to be taken down in shorthand is amended—the Legislature does not intend that electronic recording of superior court proceedings be the method of creating an official record. Although the statutes do not expressly prohibit electronic recording of superior court proceedings, they nevertheless lead to one conclusion—that the Legislature intended that such proceedings be stenographically recorded by official shorthand reporters. (See *Edmiston* v. *Superior Court* (1978) 22 Cal.3d 699, 703 [150 Cal.Rptr. 276, 586 P.2d 590] [videotaping of medical examination not intended by Legislature]; *Bailey* v. *Superior Court* (1977) 19 Cal.3d 970, 974 [140 Cal.Rptr. 669, 568 P.2d 394] [videotaping of depositions not intended by Legislature].)[19]

---

[19]We are aware that the Fifth District recently considered the propriety of the Los Angeles Superior Court's practice of using electronic recording devices when there was no request that a certified shorthand reporter record those proceedings. (See *Los Angeles County Court Reporters Assn.* v. *Superior Court, supra,* 31 Cal.App.4th at p. 407.) It evaluated many of the statutes that CCRA now urges us to find comprise a statutory scheme—sections 269, 270 and 273; Government Code sections 68086, 69941, 69942, 69952, 69953 and 72194.5—but did not find these provisions established that the use of electronic recording was prohibited in superior courts if the parties or the judge did not request a certified shorthand reporter to

## C. *Rejection of Proposed Legislation Authorizing Electronic Recording*

▮ When assessing the Legislature's intent behind the statutes, we look to the Legislature's purpose at the time that the statutory scheme was enacted. (*In re Pedro T.* (1994) 8 Cal.4th 1041, 1048 [36 Cal.Rptr.2d 74, 884 P.2d 1022] [legislative inactivity on sunset law not informative].)
▮ However, CCRA also urges us to consider—as further evidence of an intent not to permit electronic recording—the Legislature's subsequent failure to pass legislation proposed by the Judicial Council specifically authorizing electronic recording.

The California Supreme Court has been inconsistent in its treatment of the effect to be given to the Legislature's failure to act in the determination of legislative intent. (See *Burgess* v. *Board of Education* (1974) 41 Cal.App.3d 571, 580 [116 Cal.Rptr. 183] [meaning of statute].) When determining the meaning of statutory language, our high court recently held that very limited guidance can generally be drawn from the fact that the Legislature has not enacted a particular proposed amendment to an existing statutory scheme. The unpassed bills of later legislative sessions evoke conflicting inferences —supporting them to replace an existing prohibition or to clarify an existing permission; opposing them to preserve an existing prohibition or because there was no need to clarify an existing permission. As evidence of legislative intent, unadopted proposals have been held to have little value. (*Grupe Development Co.* v. *Superior Court* (1993) 4 Cal.4th 911, 922-923 [16 Cal.Rptr.2d 226, 844 P.2d 545] [meaning of statute]; see *Pitney-Bowes, Inc.* v. *State of California* (1980) 108 Cal.App.3d 307, 319 [166 Cal.Rptr. 489].)

However, when determining whether an administratively promulgated rule is consistent with controlling legislation, legislative rejection of an authorizing statute—for whatever reason—may prove more persuasive. In a case challenging an administrative regulation, the California Supreme Court noted that at the time the legislation was enacted, a provision identical to the regulation was proposed by the agency but rejected by the Legislature. (*Cooper* v. *Swoap* (1974) 11 Cal.3d 856, 859, 864-865 [115 Cal.Rptr. 1, 524

---

make a record. (31 Cal.App.4th at pp. 407-414.) Instead, it found these provisions to be consistent with section 269. (31 Cal.App.4th at pp. 413-414.) The court characterized its holding as "very narrow"—"the court is not prohibited, by any explicit or implicit legislative command contained in those specific statutes cited by [the local association of certified shorthand reporters], from choosing to maintain a record of general civil proceedings by means of electronic recording devices where neither the court nor any party requests that a verbatim record be taken by an official shorthand reporter pursuant to the provisions of section 269." (*Id.* at p. 415, fn. omitted.) The Fifth District specifically declined to address certain other issues that CCRA, in an amicus curiae brief, urged it to decide. (*Id.* at pp. 415-416.) Some of those issues are presented in our case.

P.2d 97], cert. den. 419 U.S. 1022 [42 L.Ed.2d 296, 95 S.Ct. 498].) The court held that ". . . the legislative history provides perhaps the clearest indication that the present regulation is inconsistent with legislative intent." (*Cooper* v. *Swoap*, *supra*, at p. 859.) As with Judicial Council rules, administrative regulations are only valid if they are consistent with statute. (See *id.* at p. 864.) In our case, the Judicial Council's attempt to obtain legislative amendment of the existing statutory scheme suggests that its present interpretation of that scheme as consistent with the rules it promulgated after rejection of the amendments is shaky, at best. (See, e.g., *Pitney-Bowes, Inc.* v. *State of California*, *supra*, 108 Cal.App.3d at p. 319.) By its conduct, the Judicial Council impliedly admitted that legislative authorization is needed before electronic recording of superior court proceedings may be made.

In light of the difficulties of determining the meaning of legislative rejection of proposed amendments to existing statute, we think it wiser to arrive at our conclusion independent of the Legislature's rejection of the proposed amendments. However, we cannot ignore the fact that the Legislature's rejection of the Judicial Council's proposed amendments is in accord with our interpretation of the existing statutory scheme. (See, e.g., *Pitney-Bowes, Inc.* v. *State of California*, *supra*, 108 Cal.App.3d at p. 319.)

## D. *Rules are Invalid*

After having reviewed the statutory scheme, we find that the Legislature intended the official record of superior court proceedings to be prepared only in the manner authorized by statute. (See *Edmiston* v. *Superior Court*, *supra*, 22 Cal.3d at p. 704 [videotaping of medical examination not intended by Legislature].) Until the Legislature amends section 269 to permit electronic recording to create an official record, the normal practice in California superior courts is for an official shorthand reporter to create the official record.

The challenged rules permit an official record of superior court proceedings to be made by electronic recording and impose fees for recording services. (See Cal. Rules of Court, rules 33(e), 891, 892, 980.3.) They are "inconsistent with statute" because they cannot be squared with the existing legislative scheme requiring official shorthand reporting of superior court proceedings. (See Cal. Const., art. VI, § 6.) The Judicial Council exceeded its constitutional authority by promulgating these inconsistent rules which

are, thus, invalid.[20] (See *People* v. *Hall, supra,* 8 Cal.4th at p. 953.) The Alameda County local rules permitting electronic recording are also invalid. (See *Cortez* v. *Bootsma, supra,* 27 Cal.App.4th at pp. 938-939.)

### III. REMITTITUR

The judgment is reversed.

Poché, Acting P. J., and Perley, J.,* concurred.

A petition for a rehearing was denied November 14, 1995, and respondents' petition for review by the Supreme Court was denied February 6, 1996. Lucas, C. J., Baxter, J., and George, J., did not participate therein.

---

[20]CCRA also argues that the Judicial Council lacks any inherent power to nullify relevant statutes. In light of our finding that the challenged rules are inconsistent with the statute and thus exceed the constitutional authority granted to the Judicial Council, we need not address this issue.

*Retired Associate Justice of the Court of Appeal, First District, sitting under assignment by the Chairperson of the Judicial Council.